THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: November 1, 2018



Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:<br><br>    Marina Kolchinsky,<br><br>              Debtor. | Case No. 17-30872-beh<br><br>Chapter 13 |

## MEMORANDUM DECISION AND ORDER SATISFYING ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR INELIGIBILITY UNDER 11 U.S.C. § 109(e)

On September 19, 2018, the Court issued an order requiring the debtor to show cause why her case should not be dismissed for ineligibility under 11 U.S.C. § 109(e). CM-ECF Doc. No. 111. According to her Schedule I, debtor Marina Kolchinsky is unemployed, and her only source of monthly income is $2,000 from "Mother's Contribution." CM-ECF Doc. No. 18, at 22.

Chapter 13 debt relief is limited to "individual[s] with regular income." 11 U.S.C. § 109(e). An "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title." 11 U.S.C. § 101(30). As the Court noted in its Order to Show Cause, while the term "income" is not defined in the Code, other courts have recognized that nontraditional sources of income - such as family contributions - may qualify under section 101(30). But whether such contributions can create chapter 13 eligibility will depend on the "facts and circumstance of a particular case," and "purely gratuitous contributions generally do not qualify as regular income." *In re Durov*, No. 16-71699, 2017 WL 977026, at *6 (Bankr. C.D. Ill. Mar. 10, 2017). In *Durov*, the court concluded that contributions from the debtor's parents, even when supported by a contract between them, in which the

parents agreed to make the debtor's plan payments, along with corroborating testimony from one parent, did not constitute "regular income" that would qualify the debtor for Chapter 13 relief. The *Durov* court considered that the parents' obligations were purely gratuitous, and subject to the general rule that gifts from family members cannot qualify as regular income:

> The Court does not doubt that the Debtor's parents are well-intentioned; Mary Durov was a credible witness. But the agreement simply memorializes the intent of the parents to make a series of gifts and provides the Debtor with no legally enforceable right to the payments from his parents. . . . Clearly, the purpose of entering into a contract was to try to create Chapter 13 eligibility for the Debtor. Regardless of the sincerity of the parents, their wholly gratuitous payments do not constitute "regular income" for the Debtor, and their post-petition agreement to make gifts to the Debtor cannot create Chapter 13 eligibility for the Debtor.

*Durov*, 2017 WL 977026, at *6.

On October 5, 2018, debtor Marina Kolchinsky filed a response and an affidavit of Lidia Kolchinsky regarding contributions. CM-ECF Doc. Nos. 119-120. The salient points from the affidavit are that Lidia has been living with her daughter since 2010, when Lidia's husband passed away. Since that time, Lidia has contributed at least $2,000 every month to her daughter, from pension and social security benefits. Lidia intends her contribution to cover household expenses and to help the debtor keep her home on Shepard Avenue in Milwaukee. Lidia attests that she considers the debtor's home to be her home, and that "I have nowhere else to live" and that "our living arrangements will not change." Lidia also states that she will continue her contribution for at least the five-year term of the debtor's Chapter 13 plan, and that she will aid her daughter "in any other way I can to help her succeed in her Chapter 13 case." Lidia does not state her age.

Lidia's affidavit does not describe any written contract between the debtor and herself. Even if the debtor and her mother had a written contract, it may not be determinative. The post-petition contract in *Durov* was not persuasive, in part because it lacked any consideration, and also because it gave the debtor no legally enforceable right to payments from his parents. His parents lacked any cognizable interest in the bankruptcy. It appeared the purpose of the contract was to try to create bankruptcy eligibility.

When contributions are gratuitous, other considerations come into play to assess whether the contributions qualify as regular income. Here, the fact that Lidia has shared a household with the debtor for the last eight years makes her $2,000 contribution less "gratuitous" than the parental contribution

in *Durov*, and not contrived to create eligibility. Lidia and the debtor appear to provide mutual support. Lidia is a widow, and her daughter, the debtor, is a disabled, divorced mother with sons living at home.[1]

*Durov* looked not only to the regularity of the familial income stream, but whether the income was sufficient to enable the debtor to make payments under a Chapter 13 plan. *Durov* noted that several courts have understood this requirement to mean that a debtor must have some income in excess of expenses so as to allow her to make plan payments. 2017 WL 977026 at *7. In *Durov*, the debtor's prison inmate income was *de minimis*, making it easy to conclude he lacked sufficient income to make plan payments. To be clear, eligibility "requires a lower threshold of proof than feasibility," *id.* at *7, but as *Durov* teaches, eligibility does require some showing that a debtor like Ms. Kolchinsky has sufficient regular income available to make plan payments. Another case, *In re Schwalb*, 347 B.R. 726, 759-60 (Bankr. D. Nev. 2006), cited by the debtor, makes the same point.

Here, the debtor's only income is Lidia's contribution of $2,000 each month, according to Lidia's affidavit, and according to the debtor's Schedule I. As a result, the debtor's budget, filed eleven months ago, shows only $60 in monthly net income with which to make plan payments. Yet, in the intervening months, the Court has ordered the debtor to make monthly adequate protection payments on behalf of one of her creditors, in the amount of $862.91, beginning in July, 2018. *See* CM-ECF Doc. No. 85. That monthly payment was not included on the debtor's schedule J. The debtor has begun making those payments, but she has not filed an amended budget, nor does Lidia's recent affidavit expressly reflect a contribution for those adequate protection payments. But, Lidia asserts that she intends to continue living with the debtor, and is willing to assist in any way she can to help the debtor succeed with her bankruptcy case. *See, e.g., In re Campbell*, 38 B.R. 193, 196 (Bankr. E.D. N.Y. 1984) (ruling that contributions from a debtor's siblings and daughter, each of whom had a substantial interest in the debtor's successful completion of her plan, were sufficiently stable and regular to constitute "regular income" for eligibility purposes); *In re Schwalb*, 347 B.R. at 759-60 (debtor's father had long history of providing for his daughter, well before she filed for bankruptcy).

---

[1] How many sons the debtor has living at home is unclear. In her present case she lists four, ages 14, 17, 18 and 21. CM-ECF Doc. No. 18, at 23. But in her prior Chapter 13 case, filed just seven months before this one, she listed six sons, ages 14, 16, 17, 19, 20 and 21. (Case No. 17-22823, CM-ECF Doc. No. 13, at 20.) The Court assumes the Chapter 13 trustee has followed up on this discrepancy, which presumably affects household expenditures, and to some extent, the debtor's need for assistance from Lidia.

Moreover, the debtor has filed an amended plan which offers a potential new contribution and some reduced expenses.  She has projected paying "the greater of 1/2 or the entire non-exempt portion of the net proceeds" from a personal injury claim arising from a 2014 accident, which is the subject of a 2015 lawsuit in Illinois.  The amended plan also decreases attorney fees by $2,000, and proposes a modification to cure mortgage arrears or alternatively pay for or surrender her home.  As to the State's claim for reimbursement of five years of overpaid benefits, the amended plan states "no payments will be made on this claim as debtor has no projected disposable income."

By describing both the order for adequate protection and the recent proposed amended plan in this eligibility assessment, the Court does not mean to make a "detailed analysis akin to the calculation of projected disposable income" and confuse eligibility with feasibility.  *See Durov*, 2017 WL 977026 at *7, citing *In re Santiago-Monteverde,* 512 B.R. 432, 443 (S.D.N.Y. 2014).  The Court simply illustrates that given the complexity of this case, and the likely $2,862.91 monthly burden now met by the debtor's mother, a $60 net monthly income is close to insufficient to make plan payments, particularly if there is no successful mortgage mediation.  But that detailed analysis is for another day.

The Court finds that the debtor's income, which consists of contributions from her mother, Lidia Kolchinsky, who has made those contributions for eight years before the debtor filed this bankruptcy case and who has been and continues to be a member of her household and who thereby has a substantial interest in the debtor's successful completion of her plan, is consistent and stable enough to qualify the debtor as an "individual with regular income" under 11 U.S.C. § 109(e).  Accordingly, the Court's Order to Show Cause dated September 19, 2018 is satisfied.

#####